1

2

3                                                            O

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11   XEN, INC., a California      )   Case No. CV 11-09568 DDP (MRWx)
     corporation,                 )
12                                )   **ORDER DENYING IN PART AND**
                     Plaintiff,   )   **GRANTING IN PART PLAINTIFF'S**
13                                )   **MOTION FOR**
          v.                      )   **1.   SUMMARY JUDGMENT, OR**
14                                )   **      ALTERNATIVELY, SUMMARY**
     CITRIX SYSTEMS, INC., a       )   **      ADJUDICATION ON XEN, INC'S**
15   Delaware corporation,        )   **      COMPLAINT, AND**
                                  )   **2.   SUMMARY JUDGMENT, OR**
16                   Defendant.   )   **      ALTERNATIVELY, SUMMARY**
                                  )   **      ADJUDICATION ON CITRIX**
17                                )   **      SYSTEMS INC.'S COUNTERCLAIMS**
                                  )
18   _____ )   [Docket No. 30 ]

19        Presently before the court is Xen, Inc.'s ("Plaintiff")

20   Motion for Summary Judgment or, in the alternative, for Partial

21   Summary Adjudication.  The court DENIES summary judgment on Citrix

22   Systems, Inc.'s ("Defendant") counterclaims of trademark

23   infringement, unfair competition, and false designation of origin.

24   Plaintiff's declaratory relief counts related thereto are also

25   DENIED.  The court GRANTS Plaintiff's motion for summary judgment

26   on Defendant's counterclaims for dilution and cybersquatting.

27   Plaintiff's declaratory relief counts related thereto are also

28   GRANTED.

**I. Background**

Plaintiff operates xen.com, a social networking website that allows users to "select interests, pick their level of interest, and browse through interests of other users" on matters such as television shows and restaurants. (Statement of Genuine Disputes ("SGD") ¶¶ 2, 12 (filed under seal). The website was launched in 2009. Id. ¶ 9. Plaintiff has invested at least $8,800,000 in its products and services under the Xen mark. (Id. at ¶ 14.) It is disputed how many people use xen.com, and whether the website is only available to individuals selected to test it. Id. at ¶¶ 14,16. Plaintiff's "Xen" mark is not registered.

Defendant is the owner of a number of marks that include the word "XEN" (e.g. "XEN SOURCE," "XENCENTER," "XENDESKTOP," "XEN SUMMIT," and "XENMOTION"), including two marks that contain "XEN" as its sole word. (Gates Decl. Ex. A.) Defendant, however, is not the only entity with a registered trademark that features this word. (SGD ¶ 54 (filed under seal).) Virtualization is the technology behind Citrix's XEN products. (See Wasson Decl. ¶ 19(filed under seal)); (SGD ¶ 19(filed under seal).) Virtualization software allegedly "allows one physical computer to operate as multiple 'virtual' computers- and even lets them run multiple virtual desktops on a single laptop." (See Wasson ¶ 6 (filed under seal).) It allegedly also powers cloud computing resources. (SGD ¶ 21 (filed under seal).) Defendant sells products under the XEN name, some costing several thousand dollars. (SGD ¶ 25 (filed under seal).) Defendant is also the owner of xen.org, which allows users to download various free products. (SGD ¶ 26 (filed under seal).) Defendant uses both its XEN and

1  Citrix marks in marketing its XEN products.  (SGD ¶ 28 (filed under

2  seal).)  Allegedly, every day 100 million people worldwide sign

3  onto Defendant's XENAPP and XENDESKTOP to access their employers'

4  work spaces, and Defendant allegedly receives one billion dollars

5  in yearly revenue from sales of XEN branded products.  (Wasson

6  Decl. ¶¶ 14, 25 (filed under seal).)

7  **II. Legal Standard**

8       Summary judgment shall be granted when a movant "shows that

9  there is no genuine dispute as to any material fact and the movant

10  is entitled to judgment as a matter of law."  FED. R. CIV. P.

11  56(a).  In other words, summary judgment should be entered "against

12  a party who fails to make a showing sufficient to establish the

13  existence of an element essential to that party's case, and on

14  which that party will bear the burden of proof at trial."  Parth v.

15  Pomona Valley Hosp. Med. Ctr., 630 F.3d 794, 798-99 (9th Cir.

16  2010)(internal quotation marks omitted).

17       A moving party without the burden of persuasion at trial "must

18  either produce evidence negating an essential element of the

19  nonmoving party's claim or defense or show that the nonmoving party

20  does not have enough evidence of an essential element to carry its

21  ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins.

22  Co., v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000); see also

23  Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc)

24  ("When the nonmoving party has the burden of proof at trial, the

25  moving party need only point out 'that there is an absence of

26  evidence to support the nonmoving party's case.'") (quoting Celotex

27  Corp. v. Catrett, 477 U.S. 317, 325 (1986), and citing Fairbank v.

28  Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000) (holding

3

that the *Celotex* "showing" can be made by "pointing out through argument-the absence of evidence to support plaintiff's claim")).

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[,but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

<u>T.W. Elec. Serv., v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (internal citations, quotation marks, and emphasis omitted).

At the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence, and it views all evidence and draws all inferences in the light most favorable to the non-moving party. <u>See id.</u> at 630-31 (citing <u>Matsushita Elec. Indus. Co., v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)); <u>see also Hrdlicka v. Reniff</u>, 631 F.3d 1044 (9th Cir. 2011); <u>Miranda v. City of Cornelius</u>, 429 F.3d 858, 860 n.1 (9th Cir. 2005). Speculative testimony in affidavits and motion papers is insufficient to raise genuine issues of fact and defeat summary judgment. <u>Thornhill Publ'g Co., v. GTE Corp.</u>, 594 F.2d 730, 738 (9th Cir. 1979). As the Supreme Court has stated, "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279 (9th Cir. 1996). Counsel has an obligation to lay out their

4

support clearly.  <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237
F.3d 1026, 1031 (9th Cir. 2001).  The court "need not examine the
entire file for evidence establishing a genuine issue of fact,
where the evidence is not set forth in the opposing papers with
adequate references so that it could conveniently be found."  <u>Id.</u>

**III. Analysis**

     **A. Likelihood of Confusion: Trademark Infringement, Unfair**
       **Competition, False Designation of Origin**

    Plaintiff claims that no reasonable trier of fact could find
that there is a likelihood of confusion between the parties' marks.
Likelihood of confusion is the center of the  trademark
infringement, unfair competition, and false designation of origin
claims in this case.  <u>See</u> <u>Toho Co., v. Sears, Roebuck & Co.</u>, 645
F.2d 788, 790 (9th Cir. 1981); <u>see</u> <u>also</u> <u>Brookfield Commc'n, Inc. v.</u>
<u>W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1046 (9th Cir. 1999).  The
factors for determining likelihood of confusion are: "1. strength
of the mark; 2. proximity of the goods; 3. similarity of the marks;
4. evidence of actual confusion; 5. marketing channels used; 6.
type of goods and the degree of care likely to be exercised by the
purchaser; 7. defendant's intent in selecting the mark; and 8.
likelihood of expansion of the product lines."  <u>AMF Inc. v.</u>
<u>Sleekcraft Boats</u>, 599 F.2d 341, 348-49 (9th Cir. 1979).  It is
unnecessary to meet every factor, because the likelihood of
confusion test is "fluid".  <u>Surfvivor Media, Inc. v. Survivor</u>
<u>Prods.</u>, 406 F.3d 625, 631 (9th Cir. 2005).  The test is fact
intensive, and it thus is rarely appropriate for deciding on
summary judgment.  <u>Au-Tomotive Gold, Inc. v. Volkswagen of Am.,</u>
<u>Inc.</u>, 457 F.3d 1062, 1075 (9th Cir. 2006).

1   A reasonable fact finder could decide that Defendant has a

2   strong mark.  "[T]he more unique or arbitrary a mark, the more

3   protection a court will afford it." <u>Visa Int'l Serv. Ass'n v. JSL</u>

4   <u>Corp.</u>, 610 F.3d 1088, 1090 (9th Cir. 2010); <u>J. B. Williams Co., v.</u>

5   <u>Le Conte Cosmetics, Inc.</u>, 523 F.2d 187, 192 (9th Cir. 1975)

6   (holding that "[a] strong mark is entitled to a greater degree of

7   protection").  Registration indicates strength: "There can be no

8   serious dispute with the principle that a federal trademark

9   registration of a particular mark supports the distinctiveness of

10  that mark, because the PTO should not otherwise give it

11  protection." <u>Zobmondo Entm't, LLC v. Falls Media, LLC</u>, 602 F.3d

12  1108, 1115 (9th Cir. 2010) (internal quotations omitted); <u>see also</u>

13  <u>E. & J. Gallo Winery v. Consorzio del Gallo Nero</u>, 782 F. Supp. 457,

14  462 (N.D. Cal. 1991).  Courts will also look to various other

15  factors in analyzing strength, among them is whether a mark has

16  been used successfully in commerce for a significant period of

17  time.  <u>Interplay Entm't Corp. v. TopWare Interactive, Inc.</u>, 751 F.

18  Supp. 2d 1132, 1137 (C.D. Cal. 2010).

19  Defendant owns many XEN marks.  (Gates Decl. Ex. A.)

20  Defendant has allegedly used the XEN mark in commerce since 2002.

21  (SGD ¶ 5 (filed under seal).)  Every day 100 million people

22  allegedly sign onto Defendant's XENAPP and XENDESKTOP to access

23  their employers' work spaces, and Defendant allegedly receives one

24  billion dollars in yearly revenue from sales of XEN branded

25  products.  (Wasson Decl. ¶¶ 14, 25 (filed under seal).)

26  Defendant's multiple XEN registrations and evidence of its

27  prevalent use in commerce show that a reasonable trier of fact

28  could find that Defendant's mark is strong.  This factor weighs

heavily in favor of denying summary judgment on the infringement

claim. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th

Cir. 2000) (holding that the stronger the mark "the greater

protection the mark is accorded by trademark laws").

A reasonable fact finder could decide that the parties' marks

are similar. "Similarity of the marks is tested on three levels:

sight, sound, and meaning." Sleekcraft, 599 F.2d at 351.

Regarding sight, courts will compare the spelling of words within

the marks. Id. They will also look to the marks overall design

and whether other marks accompany the mark in dispute. Id. Here,

Defendant's XEN mark is spelled exactly the same as Plaintiff's.

Regarding design, Defendant admits the marks are dissimilar.

(Memorandum in Opposition to Summary Judgment ("Op.") at 19: 19-20

(filed under seal).) However, Defendant has provided evidence that

Plaintiff sometimes uses XEN as a standalone mark, without any

accompanying design. (See, e.g., Gates Decl. Exs. E, CC.) Since

the accompanying logo is at least sometimes absent, the

significance of the difference in design is significantly

diminished. See Sleekcraft, 599 F.2d at 351. As for other

accompanying marks, Defendant admits that it uses its Citrix mark

in conjunction with its XEN mark. (SGD ¶ 28 (filed under seal).)

However, Plaintiff, the moving party, waited until its reply brief,

which was filed under seal, to argue that the Citrix mark is

prominently featured. The prominence of the Citrix mark is very

important to analyzing similarity, see Sleekcraft, 599 F.2d at 351,

but the Court should not consider new arguments made in reply

briefs, see Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007)

1  (affirming district court's decision to reject points raised for

2  the first time in reply).

3      "Sound is also important because reputation is often conveyed

4  word-of-mouth." See Sleekcraft, 599 F.2d at 351. Both parties use

5  the same word, "Xen," as a mark. Defendant claims both words sound

6  the same. (Op. at 19: 16-17 (filed under seal).) Since Plaintiff

7  does not (and probably cannot) dispute this argument, the two marks

8  are found to sound the same.

9      "Closeness in meaning can itself substantiate a claim of

10  similarity of trademarks." Sleekcraft, 599 F.2d at 352. The

11  relevant meaning is the one the "ordinary consumer" would attach to

12  the word.  4 McCarthy on Trademarks and Unfair Competition

13  ("McCarthy") § 23:26 (4th ed. 2012); see also Synergistic Int'l

14  Inc. v. Windshield Doctor, Inc., No. CV 03-579, 2003 WL 21468568,

15  at *5 (C.D. Cal. Apr. 28, 2003) (emphasizing the meaning the

16  "average consumer" would give to words). Meaning is generally only

17  relevant when different words are used. See McCarthy at § 23:26.

18  Plaintiff only offers evidence that the parties attached different

19  meanings to "Xen," but it offers no evidence that the consumers

20  would do the same. Since both parties use the same word, there is

21  no reason to think there is a difference in meaning between the two

22  marks in the mind of the general public.

23      A reasonable trier of fact could also find that Plaintiff and

24  Defendant provide similar products.  "When dealing with the second

25  Sleekcraft factor, the courts assess whether the goods  are related

26  or complementary.  Where the goods are related or complementary,

27  the danger of confusion is heightened." M2 Software, Inc. v.

28  Madacy Entm't, 421 F.3d 1073, 1081-82 (9th Cir. 2005).  Factors

1  relevant to determining similarity of products include: whether the

2  products are complementary, whether they are similar in use and

3  function, and whether they are sold to the same class of

4  purchasers.  <u>Sleekcraft</u>, 599 F.2d at 351.

5       A reasonable fact finder could decide that the products are

6  complementary and similar in use and function. Plaintiff's website

7  allows users to "collect and share [their] interests everywhere."

8  (Gates Decl. Ex. CC.)  Similarly, Defendant's XEN products

9  allegedly allow users "to communicate, work, and even play through

10 virtual meetings, training events, face-to-face video conferencing"

11 from any computer.  (Wasson Decl. ¶¶ 6, 8 (filed under seal).)

12 Plaintiff focuses on the entertainment nature of its social

13 networking product and the professional focus of Defendant's

14 virtualization products, claiming "[c]orporate virtualization

15 companies are not known for products where individuals express

16 dislike for Jersey Shore with an angry face emoticon. . . ."

17 (Motion for Summary Judgment at 15: 1-3.)

18      However, all inferences must be drawn in the light most

19 favorable to the non-moving party.  <u>T.W. Elec. Serv.</u>, 809 F.2d 630-

20 31.  The line between work and entertainment is often blurred,

21 especially within Plaintiff's field of social networking. More

22 importantly, the fact intensive nature of comparing the parties'

23 products–in comparing why people use them and what people can do

24 with them–underscores why the likelihood of confusion analysis is

25 generally inappropriate for summary judgment.  <u>Au-Tomotive Gold</u>,

26 457 F.3d 1062, 1075 (9th Cir. 2006).  In light of the collaborative

27 and communicative nature of Defendant's product, the Court finds

28

1  that a reasonable trier of fact could find that the products are
2  similar.

3      The Court's analysis *supra* has shown that a reasonable fact
4  finder is likely to decide that Defendant's mark is very strong,
5  and that Plaintiff's and Defendant's marks are substantially
6  similar.  Additionally, the Court's has demonstrated that a
7  reasonable trier of fact could find that the Plaintiff's and
8  Defendant's products are similar.  While there are other factors to
9  consider, these are three of the most important ones. important.
10 See Dreamwerks Prod. Group, Inc. v. SKG Studio, 142 F.3d 1127, 1130
11 (9th Cir. 1998).  Defendant need not meet every Sleekcraft factor
12 to show a likelihood of confusion.  Surfvivor Media, 406 F.3d at
13 631. If a few factors favor a non-moving party, it can survive
14 summary judgment on likelihood of confusion.  Dreamwerks Prod.
15 Group, 142 F.3d at 1129-30, 1132. Additionally, likelihood of
16 confusion is rarely appropriate for summary judgment. Au-Tomotive
17 Gold, 457 F.3d at 1075.  The court accordingly DENIES summary
18 judgment on the infringement, false designation of origin, and
19 unfair competition claims.

20      **B. Dilution**

21      Plaintiff argues that Defendant's dilution counterclaim must
22 be summarily adjudicated.  "A plaintiff seeking relief under
23 federal anti-dilution law must show that its mark is famous and
24 distinctive, that defendant began using its mark in commerce after
25 plaintiff's mark became famous and distinctive, and that
26 defendant's mark is likely to dilute plaintiff's mark." Visa Int'l
27 Serv. Ass'n v. JSL Corp., 610 F.3d 1088, 1089-90 (9th Cir. 2010).
28

1    Plaintiff claims Defendant's mark is not famous. There are
2  several statutory factors that courts may consider in deciding
3  whether a mark is famous.  15 U.S.C. § 1125(c)(2).[1]  However, "most
4  courts take an approach more akin to Justice Stewart's test for
5  obscenity: we know it when we see it. Unless a mark rises to the
6  level of KODAK' or 'COKE,' it is not considered famous and thus not
7  afforded protection from dilution." <u>Self-Ins. Inst. of Am., Inc.</u>
8  <u>v. Software & Info. Indus. Ass'n</u>, 208 F. Supp. 2d 1058, 1077 (C.D.
9  Cal. 2000).  Niche market fame is insufficient.  <u>Planet Coffee</u>
10 <u>Roasters, Inc. v. Dam</u>, No. SACV 09-00571-MLG, 2009 WL 2486457, at
11 *3  (C.D. Cal. Aug. 12, 2009).  A mark is famous if it is "widely
12 recognized *by the general consuming public of the United States* as
13 a designation of source of the goods or services of the mark's
14 owner."  15 U.S.C. § 1125(c)(2)(A) (emphasis added).  Even
15 extensive commercial use, substantial advertising, and significant
16 sales will not suffice to make a mark famous.  <u>Avery Dennison Corp.</u>
17 <u>v. Sumpton</u>, 189 F.3d 868, 876-77 (9th Cir. 1999) (holding marks not
18 famous despite decades of use, $3 billion in annual sales, and over
19 $5 million in advertising).

20    Defendant relies on its marketing budget, its sales, the
21 number of people who use its products, and its mark's registration
22 and distinctiveness in its effort to defeat summary adjudication.
23 (Op. at 27:21-28:6 (filed under seal).)  Such evidence is
24 insufficient. <u>See</u> <u>Avery Dennison</u>, 189 F.3d at 876-77.  In the three

25 _____

26    [1] Those factors are: "(I) The duration, extent, and geographic reach of
   advertising and publicity of the mark, whether advertised or publicized by the
27 owner or third parties. (ii) The amount, volume, and geographic extent of sales
   of goods or services offered under the mark. (iii) The extent of actual
28 recognition of the mark. (iv) Whether the mark was registered under the Act of
   March 3, 1881, or the Act of February 20, 1905, or on the principal register.

1  sentences that constitute its dilution argument, Defendant never
2  claims that its mark is famous.  Tellingly, the closest Defendant
3  comes to asserting fame is in its uncited proposition that its XEN
4  mark is "well recognized in the trade." (Op. at 28:3 (filed under
5  seal).)  Niche fame, however, will not suffice. <u>Planet Coffee</u>
6  <u>Roasters</u>, 2009 WL 2486457, at *3.  While Defendant's evidence
7  suggests that it has successful products and a strong mark, it has
8  not shown that its mark is "widely recognized by the general
9  consuming public of the United States."  <u>See</u> 15 U.S.C. § 1125(c)(2).
10  This Court therefore GRANTS summary judgment on dilution.

11  **C. Cybersquatting**

12  Defendant claims that Plaintiff is liable for cybersquatting.
13  Cybersquatting requires proof that "1) the defendant [plaintiff in
14  this case] registered, trafficked in, or used a domain name; (2)
15  the domain name is identical or confusingly similar to a protected
16  mark owned by the plaintiff; and (3) the defendant [plaintiff]
17  acted "with bad faith intent to profit from that mark." <u>DSPT</u>
18  <u>Int'l, Inc. v. Nahum</u>, 624 F.3d 1213, 1218-19 (9th Cir. 2010).
19  Generally cybersquatting occurs when "a person other than the
20  trademark holder registers the domain name of a well known
21  trademark and then attempts to profit from this by either ransoming
22  the domain name back to the trademark holder or by using the domain
23  name to divert business from the trademark holder to the domain
24  name holder." <u>Bosley Med. Inst., v. Kremer</u>, 403 F.3d 672, 680 (9th
25  Cir. 2005).

26  Plaintiff contends that summary judgment is appropriate
27  because Defendant has insufficient evidence of a bad faith intent
28  to profit from the mark.  There are nine statutory factors courts

1  may consider in determining bad faith.  15 U.S.C. §§

2  1125(d)(1)(B)(i)(I)-(IX).[2]  Prior knowledge of the claimant's mark

3  is not a statutory factor.  See 15 U.S.C. §§

4  1125(d)(1)(B)(i)(I)-(IX).  Mere knowledge of a claimant's trademark

5  is insufficient for proving bad faith generally in trademark law.

6  See Visible Sys. Corp. v. Unisys Corp., 551 F.3d 65, 76 (1st Cir.

7  2008) (holding that mere evidence of knowledge of a claimant's mark

8  is insufficient to show bad faith in an infringement case).  And

9  legislative history clarifies that one may have actual knowledge of

10 a claimant's mark without being a cybersquatter.  See 145 Cong.

11 Rec. S9744, S9749 (daily ed. July 29, 1999) (Statements on

12 Introduced Bills and Joint Resolutions) (declaring that

13 cybersquatting "does not extend to... someone who is aware of the

14

_____

15   [2]Those factors are: (I) the trademark or other intellectual property
16 rights of the person, if any, in the domain name; (II) the extent to which the
   domain name consists of the legal name of the person or a name that is otherwise
17 commonly used to identify that person; (III) the person's prior use, if any, of
   the domain name in connection with the bona fide offering of any goods or
18 services; (IV) the person's bona fide noncommercial or fair use of the mark in a
   site accessible under the domain name; (V) the person's intent to divert
19 consumers from the mark owner's online location to a site accessible under the
   domain name that could harm the goodwill represented by the mark, either for
20 commercial gain or with the intent to tarnish or disparage the mark, by creating
   a likelihood of confusion as to the source, sponsorship, affiliation, or
21 endorsement of the site; (VI) the person's offer to transfer, sell, or otherwise
   assign the domain name to the mark owner or any third party for financial gain
22 without having used, or having an intent to use, the domain name in the bona
   fide offering of any goods or services, or the person's prior conduct indicating
23 a pattern of such conduct; (VII) the person's provision of material and
   misleading false contact information when applying for the registration of the
24 domain name, the person's intentional failure to maintain accurate contact
   information, or the person's prior conduct indicating a pattern of such
25 conduct;(VIII) the person's registration or acquisition of multiple domain names
   which the person knows are identical or confusingly similar to marks of others
26 that are distinctive at the time of registration of such domain names, or
   dilutive of famous marks of others that are famous at the time of registration
27 of such domain names, without regard to the goods or services of the parties;
   and(IX) the extent to which the mark incorporated in the person's domain name
28 registration is or is not distinctive and famous within the meaning of
   subsection (c) of this section.

1  trademark status of the name but registers a domain name without a
2  bad faith intent to profit").

3       Defendant argues that there is a triable issue of fact as to
4  whether Plaintiff knew of Citrix and its XEN marks, and therefore
5  the question of whether there was bad faith intent cannot be
6  summarily adjudicated.  There are two problems with Defendant's
7  argument.  First, it has only scant evidence that Plaintiff was
8  aware of Defendant's XEN mark.  Defendant points to its marks'
9  registration and an article that Plaintiff's principals read and
10 commented on which mentions Defendant's XEN product.  However, the
11 two-page article only passingly notes Defendant's product once, and
12 never refers to it again.  (Gates Decl. Ex. U at 2563-64 (filed
13 under seal).)  While courts do not weigh evidence on summary
14 judgment, the mere scintilla of evidence of Plaintiff's knowledge
15 is insufficient to create a triable issue of fact.  Anderson, 477
16 U.S. at 252.

17      Second, and more importantly, knowledge of a mark is
18 insufficient to show bad faith.  See 15 U.S.C. §§
19 1125(d)(1)(B)(i)(I)-(IX); see also Visible Sys. Corp., 551 F.3d at
20 76; See 145 Cong. Rec. S9744, S9749 (daily ed. July 29, 1999).
21 Since the only evidence Defendant has provided is insufficient, it
22 has not met its burden to "set forth, by affidavit or as otherwise
23 provided in Rule 56, specific facts showing that there is a genuine
24 issue for trial."  T.W. Elec. Serv., 809 F.2d at 630 (internal
25 citations, quotation marks, and emphasis omitted).

26      The court further notes that many of the bad faith factors cut
27 in Plaintiff's favor.  For instance, no evidence exists that
28 Plaintiff has tried to sell its xen.com domain name to a third

1  party for financial gain (factor VI).  See 15 U.S.C. §§

2  1125(d)(1)(B)(i).  There are no allegations that Plaintiff provided

3  "material and misleading false contact information when applying

4  for the registration of the domain name" (factor VII).  See id.

5  There is no evidence that Plaintiff has registered other domain

6  names that are similar to other mark (factor VIII).  See id.  These

7  are not the only factors that favor Plaintiff.  The court only

8  mentions them to illustrate the point that not only has Defendant

9  failed to produce evidence of a bad faith intent, the available

10  evidence generally points to the opposite conclusion.

11      **D. Defendant's 56(d) request**

12      Defendant argues summary judgment is inappropriate, because it

13  still needs to conduct necessary discovery.  In response to a

14  summary judgment motion, a nonmoving party may obtain relief

15  pursuant to Fed. R. Civ. P. 56(d) ("Rule 56(d)") if it "shows by

16  affidavit or declaration that, for specified reasons, it cannot

17  present facts essential to justify its opposition."  A party

18  seeking relief under Rule 56(d) in the Ninth Circuit must show:

19  "(1) it has set forth in affidavit form the specific facts it hopes

20  to elicit from further discovery; (2) the facts sought exist; and

21  (3) the sought-after facts are essential to oppose summary

22  judgment."  Family Home and Fin. Ctr., v. Fed. Home Loan Mortg.

23  Corp., 525 F.3d 822, 827 (9th Cir. 2008).  Defendant's affidavit

24  explains that more discovery is needed to produce important

25  evidence for the likelihood of confusion element of its trademark

26  infringement counterclaim.  (Merton E. Thompson Decl. ¶ 10.)  Since

27  the court DENIES Plaintiff's request for summary judgment on

28

1  trademark infringement, it need not consider Defendant's request

2  under Rule 56(d).

3  **IV. Conclusion**

4      Based on the preceding analysis, the Court DENIES Plaintiff's

5  Motion for Summary Judgment on Defendant's counterclaim for

6  trademark infringement, unfair competition, and false designation

7  of origin.  It also DENIES Plaintiff's declaratory relief counts

8  related to these counterclaims.  However, the court GRANTS

9  Plaintiff's Motion for Summary Judgment on Defendant's

10 counterclaims of dilution and cybersquatting.  It likewise GRANTS

11 Plaintiff's declaratory relief counts related thereto.

12

13 IT IS SO ORDERED.

14

15

16 Dated: October 25, 2012

17                                  DEAN D. PREGERSON

18                             United States District Judge

19

20

21

22

23

24

25

26

27

28